## BRAINARD vs. McDEVITT.

1. Where one claims title to personal property under the second section of the statute of frauds, (Clay's Digest 255,) on the ground of his vendor's possession by way of loan not reduced to writing and recorded, he must show that his vendor, or those through whom his vendor claims, have had possession of the property for three years.

2. If his purchase was before the three years were complete, he cannot add his own possession to that of his vendor, in order to claim the benefit of the act; he must acquire title at the date of his purchase, or the act gives him none.

ERROR to the Circuit Court of Mobile.

Tried before the Hon. L. GIBBONS.

This was an action of detinue brought by McDevitt against Brainard, to recover a negro woman slave. The plaintiff introduced one Roulston as a witness, who proved that he (the plaintiff) purchased her of one Montgomery, for the sum of four hundred dollars, on the 4th day of July, 1845; that immediately after the payment of the purchase money, and the execution of the bill of sale, which was also introduced as evidence of the plaintiff's title, Montgomery left Mobile and was absent about two months; that during the absence of Montgomery, the slave was under the control of McDevitt, but remained at the house or on the premises of Montgomery. The witness also testified, that when Montgomery returned to Mobile he was in very feeble health, and, in consequence thereof, the plaintiff permitted the slave to remain with him for the purpose of nursing and attending him, and she continued with him until his death, about the 18th May, 1848. The defendant, at this stage of the cause, moved the court to exclude the evidence of Roulston, but his motion was overruled, and he excepted.

The defendant then offered proof tending to show, that Montgomery had had peaceable possession of the slave from 1837 up to his death, but the witness did not deny (in the language of the bill of exceptions) that the plaintiff, McDevitt, had had the possession and control of the slave during the absence of Montgomery from Mobile. The defendant also proved, that Montgomery, after the sale to McDevitt,

made a bill of sale of said slave to one James Devine, for the purpose of having said slave emancipated, but it appeared that Devine paid nothing for her. The defendant also proved the execution of a bill of sale for the same slave, by Montgomery, to the defendant, Brainard, bearing date the 14th day of April, 1848; and also proved that, upon the execution of this bill of sale, some money passed from Brainard, the defendant, to Montgomery, but how much the witness did not know. There was no delivery of the slave to the defendant Brainard by Montgomery, but she continued in his possession until his death. There was also evidence tending to show that, after the death of Montgomery, Brainard, through his agent, assumed the control of the slave, but she was permitted to live in the city where she pleased.

The evidence also tended to show, that Montgomery, after the sale to the plaintiff, and before his death, admitted the title of the plaintiff. This being all the testimony, the defendant's counsel moved the court again, to exclude the testimony of the plaintiff, but his motion was overruled.

The court charged the jury, that the time which had elapsed between the death of Montgomery and the assertion of the plaintiff's claim, could not be computed as part of the time necessary to make up the three years required by the statute of frauds; that, as between Montgomery and the plaintiff, the title to the slave was in the plaintiff, if the sale was *bona fide*, and that it must be shown that Montgomery had had continued possession of the slave for three years after the sale, to enable him to convey a good title to the defendant. To these charges the defendant excepted, and also requested several charges, the purport of which was, that the possession of Montgomery, connected with the defendant's possesion since Montgomery's death, gave the defendant a complete title, under our statute of frauds. But the court refused to give them, and the defendant excepted.

BLOCKER, for plaintiff in error:

The plaintiff below claimed the negro in this suit as loanor, and undertook to establish his title by parol testimony. This should have been excluded by the court. 1 Washington's Rep. 139; 3 Call's Rep. 85.

The continued possession of Montgomery up to the time of his death, and the possession of Brainard for more than a year after that event, defeats the title or claim of McDevitt as loanor; for where the owner of personal property voluntarily parts with the possession to another, either with or without an express contract, there must be a will or deed, declaring the loan, reservation, or limitation of use, or property, proved and recorded, as required by the second section of the statute of frauds, or else the absolute property shall be taken to be with the possession, in favor of creditors and purchasers. 3 Henning & M. 456; 3 Call's Rep. 85; 1 Marshall's Rep. 7; 1 Littell's Rep. 112; 4 Munford's Rep. 443; 5 ib. 305; 4 Bibb's Rep. 337; Myers v. Peek, Admr., 2 Ala. 648; Williams v. Harrel, 3 Ala. 371.

When the statute once begins to run in favor of the loanee of personal property, there is no estoppel except by action of the loanor, in asserting his right by due course of law, before the expiration of three years; and a purchaser under the loanee, before the expiration of the three years, is substituted to all his rights, the statute continuing to run in the purchaser's favor. Maul v. Hays, 12 Ala. 499. The doctrine as laid down in the case of Grisett & Agee v. Dumas, 14 Ala. 354–55, fully sustains this view, if the death of the claimant does not stop the running of the statute. Apply the rule to the holder or loanee, and those under him, and the reason of the rule is equally strong and just, and the court erred in charging that the lapse of time between the death of Montgomery and the commencement of this suit, should not be computed as a portion of the time making the three years required by the statute to complete the bar.

The charge asked and refused, " that the limitation of three years prescribed by the statute, vests a complete title in the possessor, in favor of creditors and purchasers, which can not be defeated even by proof of notice to the purchaser, as to how the possession was held," should have been given. It is not abstract, because the issue was the statute of limitations of three years, and every thing pertaining to that statute was involved in the issue. The charge was correct as an abstract legal proposition, and so held by this court in the case of Myers v. Peek's Admr., 2 Ala. 648. The charge was per-

tinent to the issue, and should have been given: because the testimony of the case, taken as a whole, tends to show, that the parties, plaintiff and defendant below, had notice of each other's acts relative to the property in controversy.

PERCY WALKER, for defendant in error:

The refusal of the court below to exclude the testimony, introduced by the plaintiff, was unquestionably correct. There was no predicate for the motion when it was made. The plaintiff below had made out his case. No evidence had been offered by the defendant, and there was no warrant for the idea, that the case was within the statute of frauds.

At that stage of the trial, the defendant below had shown no connection with the title set up by the plaintiff, and was thus within the rule in the case of Dunklin v. Wilkins, et al., 5 Ala. 199.

The court was equally correct in refusing the motion, when it was renewed subsequently, as the testimony of both plaintiff and defendant disclosed that *mala fides* could not be attributed to the plaintiff below, and that he had paid a valuable consideration for the slave. 8 Ala. 105.

The evidence shows a sufficient reason why the possession was allowed to remain with the vendor, Montgomery; that he was in such infirm health as to require the nursing and attendance by the slave.

The evidence also shows, that Montgomery, between the sale and his death, repeatedly admitted the right of ownership in the plaintiff below, and that the plaintiff below always asserted his title. These facts, connected with the good faith of the plaintiff below and the payment by him of a valuable consideration, relieve the case entirely from the second paragraph of the second section of the statute of frauds. Clay's Dig. 255.

The facts disclosed in the record show that the case of the defendant in error is not obnoxious to the last clause of the second section of the statute of frauds.

It cannot be questioned that, after the sale to the defendant in error, the title, as between Montgomery and the defendant in error, was in the latter; that the possession by Montgomery was in no sense adverse, as he repeatedly ac-

knowledged the title of defendant in error; and even if it had been, the three years required by the statute had not elapsed between the sale to defendant in error and that to plaintiff in error. The sale to the latter, even if it had been for a consideration valuable in law, conveyed no title.

The purchaser of a slave stands in no better situation in regard to the title, than the party from whom he purchased. 9 Porter, 72.

The argument of plaintiff in error, that the three years necessary to defeat the title of defendant in error under the statute, could be made, by adding the time which elapsed after the sale to plaintiff, to that which had elapsed between the sale to defendant in error and Montgomery's death, is founded upon a misconception of the statute.

Under that portion of the statute relied upon by plaintiff in error, neither the creditor of, nor a purchaser from the loanee, could acquire any right or title, as against the loanor, until the loanee had held possession for three years.

This is undoubtedly the interpretation of the statute, as applicable to mere voluntary loans, and it cannot be pretended, with any just reasoning, that a harsher interpretation should prevail, in such a case as this, where it is shown that the defendant in error bought the slave for a consideration valuable in law, and that the possession of his vendor did not continue for three years.

It cannot be assumed, that the plaintiff in error stands in any better position under the second section of the statute of frauds, than would a creditor of Montgomery, and it is clear that a creditor could not subject the property as Montgomery's, without proof that the latter, as loanee, had possession of the slave for three years, after the sale to defendant in error, and the right of possession vested in him. 14 Ala. 355, 357-8. See also Myers v. Peek, Admr., 2 Ala. 648.

DARGAN, C. J.—The only question involved in this case, grows out of the second section of our statute of frauds. That section, after prescribing the mode in which personal property shall be conveyed, when the conveyance is not founded on a valuable consideration, goes on to provide, "that where any loan of goods or chattels shall be pretended to

have been made, to any person with whom, or those claiming under him, the possession shall have remained for the space of three years, without demand made and pursued by due course of law on the part of the pretended lender; or where any reservation or limitation shall be pretended to have been made, of a use or property, by way of condition, reversion, remainder or otherwise, in goods or chattels, the possesion whereof shall have remained with another as aforesaid; the same shall be taken, as to the creditors and purchasers of the person remaining in possession, fraudulent within this act, and that the absolute property is with the possession; unless such loan, limitation, or reservation of use or property be declared by will or deed in writing, recorded as aforesaid."

We think it clear, that to give title to a purchaser under this section of the act, the three years contemplated by it must be complete at the date of his purchase. If the three years were not then complete, no title at the date of the purchase could pass to the purchaser; he could not then say, that his vendor had had the possession during the time required by the statute to give him title; and if he obtained no title at the date of his purchase, his subsequent possession could give him none; unless, indeed, he could protect himself under the statute of limitations, which is not pretended in this case.

It is, however, urged, that the statute gives the title, if the possession has remained with the borrower, or those claiming under him, for the space of three years; and as the defendant claims under Montgomery, he has the right to add his own possession to the possession of Montgomery, thus making more than three years before the suit was brought. But we cannot allow the defendant to tack his possession to the possession of Montgomery, to claim the benefit of the statute. The defendant must show, that his vendor, or those through whom his vendor claims, had had the possession for three years. And it is manifest that Montgomery did not have the possession for three years, (after he sold to McDevitt,) before he sold to the defendant.

Now, if the defendant had sold *bona fide* to another, before this suit was brought, then his vendee would have been

entitled to the benefit of his possession, as well as the possession of Montgomery; because his vendee could have said, my vendor and those through whom he claimed, have had possession of the slave for three years, by way of loan not reduced to writing; and thus have brought himself within the very words of the statute. But the defendant cannot say that his vendor, or those through whom he claims, had had three years' possession by way of loan; and, therefore, he has not brought himself within the act, nor can he claim any benefit from it.

There is no error in the ruling of the court, and the judgment must be affirmed.